FILED

2015 Apr-15  PM 04:28
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

W. DAVID NICHOLS,             }
                                  }
      Plaintiff,           }
                                  }     CIVIL ACTION NO.
v.                         }
                                  }     2:15-cv-179-WMA
ALABAMA STATE BAR,        }
                                  }
      Defendant.          }

## MEMORANDUM OPINION

Before the court are a motion to dismiss (Doc. 11) filed by defendant Alabama State Bar ("ASB") on March 27, 2015, and a motion to file exhibits under seal (Doc. 14) filed by plaintiff W. David Nichols on April 10, 2015. For the reasons stated below, the motion to dismiss will be granted, and the motion to file exhibits under seal will be denied as moot.

## BACKGROUND

Nichols gained admission to ASB in 1982. (Doc. 10-1 at 1, ¶ 1). He suffers from major depression and attention deficit hyperactivity disorder. (Doc. 10-1 at 2, ¶ 6). As a result of misconduct allegedly caused by his disabilities, Nichols was suspended from the bar in 2000, with the suspension to expire on January 31, 2003. (Doc. 10-1 at 2-3, ¶ 6-7). Because Nichols' suspension was for a term of more than 90 days, he was not reinstated automatically but was required to apply for reinstatement with ASB. Ala. R. Disc. P. 28. He did so, but his

petition was denied. (Doc. 10-1 at 2, ¶ 7). He appealed to the Alabama Supreme Court, which affirmed the denial of reinstatement. *Nichols v. Ala. State Bar*, 981 So. 2d 398 (Ala. 2007).

Nichols owns an office building in Bessemer, Alabama, with attorneys as his primary tenants. (Docs. 10-1 at 3, ¶ 9, 13 at 4). In February 2014, Nichols informed ASB of his desire again to seek reinstatement, which is permissible under Ala. R. Disc. P. 28(i). (Doc. 10-1 at 3, ¶ 9). In response, Jeremy McIntire, assistant general counsel for ASB: (1) told Nichols that he would actively oppose any reinstatement petition; (2) informed Nichols of his opinion that Nichols was in violation of Ala. R. Disc. P. 26 by performing work of a paralegal nature (namely, answering the phone in his building, typing items for his lawyer-tenants, and discussing the lawyers' cases with them); and (3) ordered Nichols to cease these activities. (Docs. 10-1 at 3, ¶ 9, 13 at 3). Nichols complied with the order "in an abundance of caution." (Doc. 10-1 at 3, ¶ 9). ASB thereupon initiated formal disciplinary proceedings against Nichols in December 2014. (Doc. 10-1 at 3, ¶ 10). In January 2015, ASB offered to resolve the proceedings by suspending Nichols for four years. (Doc. 10-1 at 4-5, ¶¶ 11, 14).

Nichols initiated this action on January 29, 2015. In his amended complaint, he asserts two causes of action, one under Title II of the ADA and one under 42 U.S.C. § 1983. He also seeks a preliminary injunction against ASB. In support of his ADA claim, he

asserts that ASB has repeatedly denied the existence of his disabilities while taking the aforementioned actions with an intent to discriminate against him based on his disabilities. In his § 1983 claim, he challenges the constitutionality of Ala. R. Disc. P. 28 and other related provisions, under which any lawyer suspended for a term of greater than 90 days is subject to the same onerous readmission standards as a disbarred lawyer. According to Nichols, this standard is violative of the Fourteenth Amendment, in that it deprives him of his property and liberty interests in his law license without due process of law. It is ASB's motion to dismiss Nichols' amended complaint that is now before the court.

### DISCUSSION

While ASB moves to dismiss on several grounds, the court finds it necessary only to discuss two of its grounds, both implicating the court's subject matter jurisdiction. "Attacks on subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) come in two forms." *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990). "Facial attacks to subject matter jurisdiction require the court merely to look and see if the plaintiff's complaint has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1335-36 (11th Cir. 2013). "'Factual attacks,' on the other hand, challenge 'the existence of subject matter jurisdiction in fact,

irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered.'" *Lawrence*, 919 F.2d at 1529 (quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)).

> Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

*Id.* (quoting *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981)).

In making its first argument, under the *Rooker-Feldman* doctrine, ASB presents and relies upon evidence outside the pleadings. Therefore, the challenge will be considered as a factual one. As relating to the Eleventh Amendment, ASB's challenge is purely facial, relying only on the pleadings. Nichols concedes that ASB is a state agency.

**A. *Rooker-Feldman* Doctrine**

ASB first challenges this court's jurisdiction under the *Rooker-Feldman* doctrine. "Under that doctrine federal district courts generally lack jurisdiction to review a final state court decision." *Doe v. Fla. Bar*, 630 F.3d 1336, 1340 (11th Cir. 2011). "Instead, 'the authority to review final decisions from the highest court of the state is reserved to the Supreme Court of the United

4

States.'" *Id.* (quoting *Dale v. Moore*, 121 F.3d 624, 626 (11th Cir. 1997)). The Supreme Court has recognized, however, "that the *Rooker-Feldman* doctrine 'has sometimes been construed to extend far beyond the contours of the *Rooker* and *Feldman* cases' and it should be 'confined to cases of the kind from which the doctrine acquired its name.'" *Nicholson v. Shafe*, 558 F.3d 1266, 1270 (11th Cir. 2009) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283, 284 (2005)). The doctrine, therefore, is only applicable in "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil*, 544 U.S. at 284.

ASB argues that, under the *Rooker-Feldman* doctrine, this court is without jurisdiction because Nichols is simply seeking review of his 2003 denial of reinstatement by the Alabama Supreme Court. According to ASB, Nichols is making the same arguments to this court that he made to the Alabama Supreme Court, which rejected them, so Nichols may not press those arguments in this court.

For two reasons, the court finds the *Rooker-Feldman* doctrine to be inapplicable to this case. First, Nicholson is not seeking review of the state court judgment — his 2003 denial of reinstatement. First, he blatantly denies any such intent. (Doc. 13 at 6). Instead, he seeks a remedy for the conduct of ASB and

McIntire beginning in 2014, when McIntire informed Nichols that he would oppose Nichols' future reinstatement and when ASB initiated disciplinary proceedings against him for his supposed paralegal work, all allegedly done with a motive to discriminate against him because of his disabilities. The mere fact that one of the remedies Nichols seeks (reinstatement to ASB) is also a remedy that the Alabama Supreme Court could have awarded him in 2003 does not preclude him from seeking that, among other remedies, in a suit regarding completely separate conduct by ASB.

Second, Nichols is not complaining of an injury caused by the 2003 denial of reinstatement. Even if his alleged injury is viewed as a denial of reinstatement, as ASB contends, Nichols is expressly permitted by Ala. R. Disc. P. 28(i) to seek reinstatement annually. The 2003 judgment did not speak to his permanent fitness to practice law in Alabama, but only to his fitness at that time, so the 2003 denial was not the real or proximate cause of his current injury. Therefore, the *Rooker-Feldman* doctrine does not bar Nichols' claims.

**B. Eleventh Amendment Immunity**

The Eleventh Amendment, on the other hand, does bar Nichols' claims. ASB is a state agency. *See* Ala. Code § 34-3-1 *et seq.* (1975). "Absent a legitimate abrogation of immunity by Congress or a waiver of immunity by the state being sued, the Eleventh Amendment is an absolute bar to suit by an individual against a

state or its agencies in federal court." *Gamble v. Fla. Dep't of Health and Rehab. Serv.*, 779 F.2d 1509, 1511 (11th Cir. 1986).

**1. ADA Claim (Title II)**

When Congress enacted the ADA, it included a seemingly all-encompassing abrogation of Eleventh Amendment immunity:

> A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this chapter. In any action against a State for a violation of the requirements of this chapter, remedies (including remedies both at law and in equity) are available for such a violation to the same extent as such remedies are available for such a violation in an action against any public or private entity other than a State.

42 U.S.C. § 12202 (2012). Congress' power to abrogate Eleventh Amendment immunity, however, is limited. "Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and 'act[s] pursuant to a valid grant of constitutional authority.'" *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) (quoting *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73 (2000)). The only constitutional authority Congress may invoke in abrogating Eleventh Amendment immunity is § 5 of the Fourteenth Amendment. *Id.* at 364. "Accordingly, the ADA can apply to the States only to the extent that the statute is appropriate § 5 legislation." *Id.*

The enforcement power found in § 5 is broad. "It includes 'the authority both to remedy and to deter violation of rights guaranteed [by the Fourteenth Amendment] by prohibiting a somewhat

broader swath of conduct, including that which is not itself forbidden by the Amendment's text.'" *Tennessee v. Lane*, 541 U.S. 509, 518 (2004) (quoting *Kimel*, 528 U.S. at 81). "Congress may enact so-called prophylactic legislation that proscribes facially constitutional conduct, in order to prevent and deter unconstitutional conduct," *Nev. Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 727-28 (2003), but "those measures may not work a 'substantive change in the governing law,'" *Lane*, 541 U.S. at 520 (quoting *City of Boerne v. Flores*, 521 U.S. 507, 519 (1997)). "Accordingly, § 5 legislation reaching beyond the scope of § 1's actual guarantees must exhibit 'congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end.'" *Garrett*, 531 U.S. at 365 (quoting *Boerne*, 521 U.S. at 520).

"In order to establish whether Congress's enactment of Title II of the ADA satisfies the *Boerne* 'congruence and proportionality' requirements [the court] follow[s] a three-step analysis." *Ass'n for Disabled Americans, Inc. v. Fla. Intern. Univ.*, 405 F.3d 954, 957 (11th Cir. 2005). The first step "is to identify with some precision the scope of the constitutional right at issue." *Garrett*, 531 U.S. at 365. In discussing Title I of the ADA, the Court in *Garrett* found that the Fourteenth Amendment generally limits the ability to discriminate based upon the classification of individuals as disabled, but such treatment is only subject to

rational-basis review. *Id.* at 366. "Under rational-basis review, where a group possesses 'distinguishing characteristics relevant to interests the State has the authority to implement,' a State's decision to act on the basis of those differences does not give rise to a constitutional violation." *Id.* at 366-67 (quoting *Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 441 (1985)). "Such a classification cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Heller v. Doe*, 509 U.S. 312, 320 (1993).

In regard to Title II, under which Nichols brings this claim, the Court in *Lane* recognized the statute's "prohibition on irrational disability discrimination. But [Title II] also seeks to enforce a variety of other basic constitutional guarantees, infringements of which are subject to more searching judicial review." *Lane*, 541 U.S. at 522-23. For example, the plaintiffs in *Lane* were disabled individuals seeking to vindicate their right of access to the courts. The Court found such a right to be protected by the Due Process Clause of the Fourteenth Amendment and the Confrontation Clause of the Sixth Amendment and thus subject to heightened judicial protection. *Id.* at 523. In *United States v. Georgia*, 546 U.S. 151 (2006), the Court found that a disabled inmate's challenge to conditions of his confinement implicated the Eighth Amendment. In *Association for Disabled Americans*, the

9

Eleventh Circuit found heightened review applicable regarding disabled children's access to public education. 404 F.3d 954 (2005).

In this case, however, no interests implicating heightened scrutiny are present. "The right to practice law is not a fundamental right, and therefore rational basis review is the appropriate standard" to apply. *Kirkpatrick v. Shaw*, 70 F.3d 100, 103 (11th Cir. 1995). No other fundamental right or suspect class is implicated, since *Garrett* makes clear that the disabled are not a suspect class. Nichols' assertions of property and liberty interests in his law license are primarily directed toward his § 1983 claim, not his ADA claim, and in any case do not result in heightened scrutiny of the deprivation of his license. Accordingly, Nichols' implicated Fourteenth Amendment rights are narrow, subject only to rational-basis review.

The second step in the process is to "examine whether Congress identified a history and pattern of unconstitutional . . . discrimination by states against the disabled." *Garrett*, 531 U.S. at 368. When performing this analysis in *Lane*, "the Supreme Court considered the record supporting Title II **as a whole**, and conclusively held that Congress had documented a sufficient historical predicate of unconstitutional disability discrimination in the provision of public services to justify enactment of a prophylactic remedy pursuant to Congress's authority under Section

5 of the Fourteenth Amendment." *Ass'n for Disabled Americans*, 405 F.3d at 958 (emphasis in original). Therefore, as in *Lane*, the second step is satisfied in this case.

Finally, the third step is to determine "whether Title II is an appropriate response to this history and pattern of unequal treatment." *Lane*, 541 U.S. at 530. As stated above, for Title II to be such an appropriate response, it "must exhibit 'congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end.'" *Garrett*, 531 U.S. at 365 (quoting *Boerne*, 521 U.S. at 520). While the second step focuses on Title II as a whole, "the congruence and proportionality of the remedies in Title II should be judged on an individual or 'as-applied' basis in light of the particular constitutional rights at stake in the relevant category of public services." *Ass'n for Disabled Americans*, 405 F.3d at 958. When the constitutional rights implicated are protected only by deferential review, as they are in this case, it is necessarily more difficult to show the requisite congruence and proportionality. *See Lane*, 541 U.S. at 529.

This court finds that Title II does not exhibit the congruence and proportionality necessary to abrogate the state's Eleventh Amendment immunity in this context — namely, regulation of attorney conduct. When analyzing whether the statute's remedy is congruent and proportional — that is, whether there is a sufficient fit between the constitutional injury and the statutory scheme to

remedy it — the Courts in *Garrett*, *Lane*, and *United States v. Georgia* all compared the scope of the constitutional rights at issue, the evidence of unconstitutional discrimination in the particular context, and the breadth of the statutory remedy created in order to make this determination. This court will do the same. As described above, any constitutional rights implicated in this case are narrow. The evidence before Congress of disability discrimination was also narrow — in fact, it was practically nonexistent. Nowhere in the relevant statutory text or congressional findings, reports, or hearings is there a single mention of disability discrimination as related to discipline, suspension, reinstatement, or other regulation of the conduct of attorneys or any other licensed professionals. *See* 42 U.S.C. § 12101 (2012); S. Rep. No. 101-116 (1989); S. Hrg. No. 101-156 (1989); H.R. Rep. No. 101-485 (1990); H.R. Rep. No. 101-558 (1990) (Conf. Rep.); H.R. Rep. No. 101-596 (1990) (Conf. Rep.).

Because the Fourteenth Amendment itself offers little protection to the disabled, and because Congress had before it no evidence of unconstitutional discrimination in the regulation of disabled attorneys' conduct, any congruent and proportional remedy must itself be very narrow, not working a "substantive change in the governing law," *Boerne*, 521 U.S. at 519. But Title II flatly prohibits any form of discrimination on basis of disability, 42 U.S.C. § 12132, far exceeding the scope of rational-basis review,

which would permit disparate treatment of disabled attorneys "if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose," *Heller*, 509 U.S. at 320. Therefore, as relating to the regulation of disabled attorneys' conduct, the ADA's abrogation of Eleventh Amendment immunity for Title II claims exceeds the scope of permissible legislation under § 5 of the Fourteenth Amendment. Consequently, ASB is immune from Nichols' ADA claim, and the claim will be dismissed.

**2. § 1983 Claim**

Eleventh Amendment analysis is much simpler under § 1983 than under the ADA: Congress has not purported to abrogate immunity for § 1983 actions, *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989), and the State of Alabama has not waived it, *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1525 (11th Cir. 1990), so ASB is immune from Nichols' § 1983 claim. Additionally, a state or state agency is not subject to suit under § 1983 because it is not a "person" within the meaning of the statute. *Will*, 491 U.S. at 66. Therefore, Nichols' § 1983 claim will be dismissed.

### CONCLUSION

For the reasons stated above, ASB's motion to dismiss will be granted. Consequently, Nichols' request for a preliminary injunction will be denied, and his motion to file exhibits under seal will be denied as moot. A separate order implementing these conclusions will be entered.

DONE this 15th day of April, 2015.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE