FILED

2015 Jun-19  PM 03:31
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| W. DAVID NICHOLS, | } | |
| | } | |
| Plaintiff, | } | |
| | } | CIVIL ACTION NO. |
| v. | } | |
| | } | 2:15-cv-179-WMA |
| ALABAMA STATE BAR, | } | |
| | } | |
| Defendant. | } | |

## MEMORANDUM OPINION AND ORDER

Before the court is a motion (Doc. 17), filed by plaintiff W. David Nichols, to alter, amend, or vacate this court's order of April 15, 2015 (Doc. 16), which dismissed the above-entitled action. For the reasons stated below, the motion will be denied.

"The only grounds for granting [a Rule 59] motion are newly-discovered evidence or manifest errors of law or fact." *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007) (quoting *In re Kellogg*, 197 F.3d 1116, 1119 (11th Cir. 1999)). The movant "cannot use a Rule 59(e) motion to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." *Michael Linet, Inc. v. Wellington, Fla.*, 408 F.3d 757, 763 (11th Cir. 2005).

Nichols advances several arguments in support of his position that the court erred in dismissing his case. Most of these arguments (all except those directly attacking the court's reasoning) could have been raised before the court's entry of final

judgment. There is no newly discovered evidence. The court should decline to entertain Nichols's motion but will address his arguments.

## A. ASB is a State Agency

Nichols's first argument is that the Eleventh Amendment does not bar his claims against defendant Alabama State Bar ("ASB") because ASB is not a state agency. "The Eleventh Amendment protects the immunity of not only the states, but of state agencies and entities that function as an 'arm of the state.'" *Ross v. Jefferson Cty. Dep't of Health*, 701 F.3d 655, 659 (11th Cir. 2012). "In determining whether the Eleventh Amendment provides immunity to a particular entity, this court examines the following factors: (1) how state law defines the entity; (2) what degree of control the state maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity." *Miccosukee Tribe of Indians v. Fla. State Athletic Comm'n*, 226 F.3d 1226, 1231 (11th Cir. 2000). Even though the Eleventh Circuit in *Versiglio v. Board of Dental Examiners*, 686 F.3d 1290 (11th Cir. 2012), appeared to apply a test focusing almost exclusively on the characterization of the entity by state courts, the court has since *Versiglio* held that the four-factor test is still the law of the circuit. *Walker v. Jefferson Cty. Bd. of Educ.*, 771 F.3d 748, 754 (11th Cir. 2014). "Although state law is considered, the question whether an entity is an arm of the state

is one of federal law." *Williams v. Dist. Bd. of Trs. of Edison Cmty. Coll., Fla.*, 421 F.3d 1190, 1192 (11th Cir. 2005). After consideration of the four factors, the court finds that ASB is an arm of the state of Alabama and thus is entitled to the protections of the Eleventh Amendment.

**1. How state law defines ASB**

Alabama law does not clearly define ASB's status for immunity purposes. No court decision has directly reached the issue, though both parties cite various cases as supporting their positions. Nichols repeatedly cites *Ex parte Griffith*, 178 So. 2d 169, 174 (Ala. 1965), which states: "Members of the bar of Alabama are members of a private incorporated association." ASB cites *Simpson v. Alabama State Bar*, 311 So. 2d 307 (Ala. 1975), and *Board of Commissioners of the Alabama State Bar v. State ex rel. Baxley*, 324 So. 2d 256, 262 (Ala. 1975), for the proposition that ASB is an "arm of [the Alabama Supreme C]ourt." These statements, however, were made in contexts far removed from ASB's immunity from suit, so they are of limited use. Whether ASB is a state agency for some but not all purposes (the state-officer oath of office in *Griffith* and the authority to discipline lawyers in *Baxley* and *Simpson*) "is a separate and independent question from whether [ASB i]s a state agency for Eleventh Amendment purposes." *Tuveson v. Fla. Governor's Council on Indian Affairs, Inc.*, 734 F.2d 730, 735 (11th Cir. 1984).

Alabama statutes, while illuminative of ASB's functions, are similarly inconclusive. ASB was created by statute in 1923, Ala. Code § 34-3-40 (1975), as a mandatory bar to which all Alabama lawyers must belong. ASB has authority to regulate the examination and admission of applicants to ASB and the conduct, discipline, and reinstatement of the lawyers it licenses, subject to the approval of the Alabama Supreme Court. Ala. Code § 34-3-43(a) (1975). ASB's funds (from fees and licenses) are deposited into an account within the state treasury. Ala. Code § 34-3-4 (1975). ASB may expend only these funds as budgeted and appropriated by the state legislature. Ala. Code § 34-3-44 (1975).

Because neither Alabama statutes nor caselaw define ASB, the court will look to the test Alabama courts apply to determine whether an entity is a state agency and immune from suit. Under Alabama law, "Whether a lawsuit against a body created by legislative enactment is a suit against the state depends on [1] the character of power delegated to the body, [2] the relation of the body to the state, and [3] the nature of the function performed by the body." *Ex parte Bd. of Dental Exam'rs*, 102 So. 3d 368, 374 (Ala. 2012) (quoting *Armory Comm'n v. Staudt*, 338 So. 2d 991, 993 (Ala. 1980)).

### a. Character of power delegated to ASB

This inquiry focuses on the powers and duties delegated to ASB by the state legislature. In *Dental Examiners*, the court found that

the powers and duties delegated to the Dental Board prove that the
Dental Board is a state agency. The practice of dentistry
"affect[s] the public health." Ala. Code § 34-9-2(a) (1975). The
Board of Dentistry has the authority to regulate (1) qualification
and licensing of dentists, (2) dental education, and (3) conduct of
practicing dentists, including the authority to discipline, *Dental
Exam'rs*, 102 So. 3d at 374-77.

ASB is given very similar authority. ASB has power to
determine qualifications to practice law in the state, Ala. Code §
34-3-43(a)(1), to examine applicants and certify applicants as
qualified, Ala. Code § 34-3-43(a)(2), to regulate the conduct of
attorneys and investigate all complaints, Ala. Code § 34-3-
43(a)(3), to discipline lawyers, Ala. Code § 34-3-43(a)(5), and to
regulate reinstatement of lawyers, Ala. Code § 34-3-43(a)(4). As in
*Dental Examiners*, because the delegated powers are public in nature
and would otherwise be held by the state (the Alabama Supreme
Court, in this case), this delegation supports a finding that ASB
is a state agency.

### b. Relation of ASB to the state

In *Dental Examiners*, the court found a relation of the Board
to the state because the Board receives funds from the state, even
though the Board raises its own funds, which are never deposited
into the state treasury. Instead, the legislature authorized the
Board to collect fees and deposit them directly into the Board's

bank accounts. *Dental Exam'rs*, 102 So. 3d at 382. According to the court, "[O]nce the Board collects the funds established by the legislature, those funds become State funds. The mere fact that the legislature appropriates those funds before they reach the State treasury does not alter their status as State funds." *Id.* Similarly, in *Mooneyham v. State Board of Chiropractic Examiners*, 802 So. 2d 200, 204 (Ala. 2001), the court found a relation between the Board and the state because, while the Board collects its own fees, it is required to deposit them into a separate fund in the state treasury.

ASB is similarly related to the state. While it generates its own funds from fees, those fees are permitted by the state and must be deposited into a separate account in the state treasury. Ala. Code § 34-3-4, 44 (1975). Accordingly, they are state funds, just as in *Dental Examiners*. Indeed, this case is stronger because the funds are actually deposited into the treasury and cannot be spent except as appropriated by the legislature. *Id.* Therefore, this factor supports a finding that ASB is a state agency.

### c. Nature of the function performed by ASB

The focus of this inquiry is whether the functions performed by the entity are of a public or private nature. *Dental Exam'rs*, 102 So. 3d at 383-86. The court found the Dental Board to exercise public functions because it regulates who may engage in the practice of dentistry, promulgates rules regulating the practice,

6

investigates and punishes violations of its rules, and receives its funding from the state (broadly speaking). *Id.* ASB regulates the practice of law in the same ways. Accordingly, this factor also weighs in favor of finding ASB to be a state agency. Based on all three factors, then, this court concludes that ASB would be deemed a state agency under Alabama law.

**2. Degree of control the state maintains over ASB**

This factor examines whether the state exercises enough control over the entity for it to be considered a state agency. The form such control takes is varied and context-specific. In *Manders v. Lee*, 338 F.3d 1304, 1320-22 (11th Cir. 2003), the Eleventh Circuit, when considering immunity of Georgia sheriffs, focused on the training required by the state and the governor's authority to discipline them. In *Miccosukee*, 226 F.3d at 1232-33, the court found the state of Florida's authority over the Athletic Commission sufficient because of its supervision of the commission's rule-making powers and the selection of commission members by the governor and legislature.

Here, ASB functions as an arm of the Supreme Court of Alabama. *Baxley*, 324 So. 2d at 262. Its authority to promulgate rules regulating attorney conduct and discipline and to reinstate lawyers is subject to the approval of the Supreme Court. Ala. Code § 34-3-43(a). It may not admit applicants on its own but may only certify the names of qualified applicants to the Supreme Court. Ala. Code

§ 34-3-43(a)(1). It must deposit all funds into the state treasury and may only spend them as appropriated by the state legislature. Ala. Code § 34-3-44. ASB's finances fall under the supervision of the Alabama Department of Finance. Ala. Code § 41-4-2 (1975). Because of the control exercised on ASB's authority to regulate the practice of law and on its finances, the court finds that this factor weighs in favor of finding ASB to be a state agency.

### 3. Where ASB derives its funds

As stated above, ASB is authorized by the legislature to collect fees, which are to be deposited into the state treasury. Ala. Code §§ 34-3-3 to -5 (1975). Those funds may only be expended as appropriated by the legislature. Ala. Code § 34-3-44. The Department of Finance supervises ASB. Ala. Code § 41-4-2.

These facts are strikingly similar to *Miccosukee*, 226 F.3d at 1233, in which the Eleventh Circuit found this factor to weigh in favor of agency status. In that case, the Athletic Commission raised its own funds, but it was required to deposit its funds into the state treasury and spend them only as appropriated by the state legislature. From these facts, the court concluded that the state "controls the Florida Commission's fiscal life," indicative of a state agency. *Id.* As the pertinent facts are identical to this case, this court readily concludes that the state controls ASB's fiscal life in such a way to support its status as a state agency.

**4. Who is responsible for judgments against ASB**

Nichols contends that this factor weighs in his favor, since he does not seek damages against ASB. The Eleventh Circuit, however, has consistently looked to who would **generally** be responsible for judgments against the entity, not responsibility in the specific case. *See, e.g.*, *Miccosukee*, 226 F.3d at 1234; *see also Manders*, 338 F.3d at 1325 ("The focus of the Supreme Court . . . was on 'potential legal liability' and 'the risk of adverse judgments,' as opposed to requiring that state funds actually pay the judgment.") (quoting *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 431 (1997)). Examining the responsibility for judgments generally, then, the court finds this factor to weigh in favor of agency status. In *Miccosukee*, the commission's judgments must have been paid either from the commission's separate treasury fund or from Florida's state self-insurance fund. The court found this to support agency status, since the state would either directly pay the judgments (through the self-insurance fund) or indirectly pay them (through the commission's treasury fund), as the legislature was required to approve the commission's debts through the budgeting and appropriation process. 226 F.3d at 1234. In *Manders*, the Eleventh Circuit went further, finding state agency status for a sheriff's office even though the office would be forced to pay judgments out of its own funds. The Eleventh Circuit found that "this payment would reduce his budget, and the practical reality is

9

that Sheriff Peterson must recoup that money from somewhere." *Manders*, 338 F.3d at 1327.

ASB would pay any judgments out of its treasury fund, but no such withdrawal is permitted "except as budgeted and allotted" by the state legislature. Ala. Code § 34-3-44. Consequently, this would effect a drain on the treasury, albeit to a separate fund. Further, as in *Manders*, the money paid may need to be recouped from somewhere, potentially impacting the treasury as a whole. Accordingly, this factor, as well as all others, weigh in favor of agency status, so the court finds that ASB is a state agency or arm of the state for purposes of Eleventh Amendment immunity.

**B. Application of Eleventh Amendment Immunity**

Nichols next argues that, even if ASB is a state agency, the Eleventh Amendment offers no protection against his claims. The court finds each of his arguments in this regard lacking in merit.

**1. Section 1983 claim**

In his motion and reply, Nichols makes various arguments regarding his § 1983 claim, but only one such argument addresses this court's finding that his claim is barred by the Eleventh Amendment: Nichols contends that the Eleventh Amendment is inapplicable to his claim because he only seeks prospective injunctive relief, seemingly referring to the doctrine of *Ex parte Young*, 209 U.S. 123 (1908). "State agencies, however, are never subject to unconsented suit, even under the doctrine of *Ex parte*

10

*Young.   Ex parte Young* applies only when state officials are sued
for prospective relief in their official capacity. It does not
permit suit against state agencies or the state itself, even when
the relief is prospective." *Eubanks v. Leslie*, 210 F. App'x 837,
844 (11th Cir. 2006). Further, to the extent he attempts to assert
a claim for a direct action under the Fourteenth Amendment in his
reply to the motion to alter, amend, or vacate (Doc. 22 at 9), that
assertion is improper, as he does not purport to state such a claim
in his complaint.

### 2. ADA claim

Nichols advances two arguments in an attempt to revive his ADA
claim. Neither of these arguments is meritorious.

### a. Valid abrogation of immunity

In its opinion of April 15, 2015 (Doc. 15), this court found
that Congress did not abrogate the states' Eleventh Amendment
immunity against ADA claims regarding regulation of attorney
conduct because the abrogation provision exceeds the scope of
congressional authority provided by § 5 of the Fourteenth
Amendment. In performing the analysis, the court found Nichols's
implicated rights to be narrow, and Congress's identification of
evidence of unconstitutional discrimination in the regulation of
disabled attorneys' conduct to be lacking, so the remedy created is
not sufficiently congruent and proportional to pass muster.

Nichols now argues that the court's analysis is flawed because

it undervalues his implicated constitutional rights. Nichols contends that he possesses property and liberty interests in his law license, so that the deprivation of that license by ASB is subject to strict scrutiny. Nichols, however, cites no authority for his proposition that the deprivation of any property and liberty interest is subject to strict scrutiny. This is for good reason, as this court also cannot locate any such authority. "If a law treats individuals differently on the basis of race or another suspect classification, or if the law impinges on a fundamental right, it is subject to strict scrutiny. Otherwise, the law need only have a rational basis — *i.e.*, it need only be rationally related to a legitimate government purpose." *Leib v. Hillsborough Cty. Pub. Transp. Comm'n*, 558 F.3d 1301, 1306 (11th Cir. 2009). "[T]here is no fundamental right to practice law . . . ." *Schwarz v. Kogan*, 132 F.3d 1387, 1390 n.2 (11th Cir. 1998).[1] The disabled are not a suspect class. *Bd. of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 366 (2001). Accordingly, Nichols has failed to show why his bare assertions of property and liberty interests implicate heightened scrutiny, so their deprivation is only subject to rational basis review.

---

[1]Nichols quibbles with this court's previous citation to *Kirpatrick v. Shaw*, 70 F.3d 100, 103 (11th Cir. 1995) (per curiam), which recites the same statement as *Schwarz*, because it was given in the context of a bar applicant, not a licensed lawyer. *Schwarz*, however, involved a practicing lawyer, yet the Eleventh Circuit made no distinction between the contexts.

The Tenth Circuit's opinion in *Guttman v. Khalsa*, 669 F.3d 1101 (10th Cir. 2012), is instructive. In *Guttman*, the plaintiff's medical license was revoked, and he sued the state of New Mexico under Title II of the ADA. The court found the state immune from suit. It first noted that "a disabled individual's right to practice in his chosen profession . . . does not invoke heightened scrutiny." *Id.* at 1118. The court continued: "Indeed, although 'the liberty component of the Fourteenth Amendment's Due Process Clause includes some generalized due process right to choose one's field of private employment, this right is 'subject to reasonable government regulation.'" *Id.* (quoting *Conn v. Gabbert*, 526 U.S. 286, 291-92 (1999)). The court next found that "Congress did not identify a history of irrational discrimination in professional licensing when enacting Title II." *Id.* at 1119. After considering the narrow right at issue and the lack of history of unconstitutional discrimination, the court held that Title II, "as applied to professional licensing, 'far exceeds what is constitutionally required,'" *id.* at 1124 (quoting *Garrett*, 531 U.S. at 372), so "Title II does not validly abrogate New Mexico's sovereign immunity in the area of professional licensing," *id.* at 1125.

*Guttman* is substantially similar to this case and supports this court's determination (1) that Nichols's implicated rights, like Guttman's, are narrow, (2) that Congress identified no history

of irrational disability discrimination in the area of regulating professional conduct, and (3) that the remedy crafted is not sufficiently congruent and proportional to be a proper exercise of Congress's § 5 powers. Therefore, this court's previous determination was not in error and will not be disturbed.

### b. Waiver/Estoppel

Finally, Nichols makes several arguments to the effect that ASB has either waived immunity from ADA claims or is estopped from asserting it. First, as to waiver, the Eleventh Circuit has made clear that waiver or consent may only be found in three circumstances:

> The clearest of the three, known as express consent, usually takes the form of legislative enactment. The second form of consent derives from the states' ratification of the Constitution. This "plan of convention" consent assumes that, by ratifying the Constitution and joining the republic, each state ceded certain powers to the federal system; implicit in this cession is the understanding that the state necessarily also consented to suit in certain cases. Thus, the Court has held that, by ratifying the Constitution, the states waived their immunity to suits by the United States and by sister states. Finally, the Court has created a third, extremely limited category of consent. This consent is premised on the state's participation in a congressional program which, as a prerequisite for participation, mandates that the state consent to suit.

*Seminole Tribe v. Florida*, 11 F.3d 1016, 1021-22 (11th Cir. 1994) (internal citations omitted). Nichols contends that ASB waived its immunity by participating in another ADA case against it without asserting immunity, *Cox. v. Ala. State Bar*, 330 F. Supp. 2d 1265 (M.D. Ala. 2004), and by holding itself out as a "private

incorporated association" on its website. Neither of these establishes waiver of immunity; they could only be construed as forms of express consent, but such waiver "must be explicitly authorized by the state 'in its Constitution, statutes and decisions,'" *Seminole Tribe*, 11 F.3d at 1022 (quoting *Silver v. Baggiano*, 804 F.2d 1211, 1214 (11th Cir. 1986)). ASB's description of itself on its website and its participation in an ADA suit clearly do not amount to explicit authorization, so no waiver is present.

Neither is ASB estoped from asserting its immunity. Whether the applicable form of estoppel is judicial or equitable, the thrust of each is that "a party may not maintain inconsistent positions in successive law suits when he has successfully convinced a court of the merit of his position in the first action." *Tuveson*, 734 F.2d at 735; *see also Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1285 (11th Cir. 2002). ASB's statement on its website does not estop it from asserting immunity because it is not inconsistent with that assertion — as previously discussed, both agency status and immunity are context-specific, so ASB's general description of itself as a private incorporated association is not in conflict with its current claim. And while ASB did not assert immunity in *Cox*, that decision did not cause its success in that case, as ASB was granted summary judgment on other grounds, and the immunity analysis might have been different in the

separate context of testing accommodations. Therefore, ASB is not estopped from asserting Eleventh Amendment immunity in this case.

## CONCLUSION

For the reasons stated above, Nichols's motion to alter, amend, or vacate (Doc. 17) is DENIED.

The parties shall bear their own respective costs.

DONE this 19th day of June, 2015.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE